FILED

2012 MAR 13 PH 1:58

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

1  SETH ARONSON (S.B. #100153)
2  AMY J. LONGO (S.B. #198304)
   KATHARINE S. MERCER (S.B. #267006)
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
5  Facsimile: (213) 430-6407
6  saronson@omm.com
   alongo@omm.com
7  kmercer@omm.com

8
9  Attorneys for Defendant John L. Clendenin

10

11        UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA

13              SOUTHERN DIVISION

14

15  JORGE L. VERAR, derivatively on        Case No.:
    behalf of POWERWAVE                    SACV12-00385 JST (RNBx)
16  TECHNOLOGIES, INC.,
                                           NOTICE OF REMOVAL TO THE
17            Plaintiff,                    UNITED STATES DISTRICT
                                           COURT FOR THE CENTRAL
18       v.                                DISTRICT OF CALIFORNIA
                                           UNDER 28 U.S.C. § 1441(a)
19  RONALD J. BUSCHUR, KEVIN T.
    MICHAELS, MOIZ M.
20  BEGUWALA, KEN J. BRADLEY,
    RICHARD E. BURNS, JOHN L.
21  CLENDENIN, DAVID L.
    GEORGE, EUGENE E. GODA,
22  AND CARL W. NEUN,

23            Defendants,

24
    And
25
    POWERWAVE TECHNOLOGIES,
26  INC.,

27            Nominal Defendant

28

1    PLEASE TAKE NOTICE THAT DEFENDANT JOHN L.

2  CLENDENIN, a resident of Florida, hereby removes to this Court the state court

3  action described below:

4    1.    On March 7, 2012, an action was commenced in the Superior

5  Court for the County of Orange, entitled *Jorge L. Verar, derivatively on behalf of*

6  *Powerwave Technologies, Inc. v. Ronald J. Buschur, Kevin T. Michaels, Moiz M.*

7  *Beguwala, Ken J. Bradley, Richard E. Burns, John L. Clendenin, David L. George,*

8  *Eugene E. Goda, and Carl W. Neun, Defendants, and Powerwave Technologies,*

9  *Inc., Nominal Defendant*, as Case No. 30-2012-00552065-CU-BT-CXC. A copy of

10  the Complaint is attached as Exhibit A.

11    2.    Defendant John L. Clendenin appeared and accepted service of

12  process in this action. A copy of the notice of appearance is attached as Exhibit B.

13    3.    This action is a civil action of which this Court has original

14  jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this

15  Court by John L. Clendenin, pursuant to the provisions of 28 U.S.C. § 1441(a) in

16  that it is a civil action wherein the amount in controversy exceeds the sum of

17  $75,000, exclusive of interest and costs, and is between citizens of different states.

18    4.    Plaintiff's complaint does not specifically state the amount of

19  alleged damages. Defendant is informed and believes however that based on the

20  allegations alleged in the complaint that the damages alleged are in excess of

21  $75,000.

22    5.    Plaintiff's complaint does not identify the plaintiff's citizenship.

23  The complaint, however, does not include the absence of diversity jurisdiction.

24  Therefore, by negative implication, defendant believes that the plaintiff is not a

25  citizen of any state in which one of the defendants is a citizen.

26    6.    Defendant is informed and believes that none of the other

27  defendants have been served in this action. *See* 28 U.S.C. § 1441(b) (diversity

28  action is removable only if none of the "parties in interest properly joined and

NOTICE OF REMOVAL

1  served as defendants is a citizen of the State in which such action is brought");

2  *Cucci v. Edwards*, 510 F. Supp. 2d 479, 482 (C.D. Cal. 2007) ("a resident

3  defendant who has not been served may be ignored in determining removability");

4  *Republic Western Ins. Co. v. International Ins. Co.*, 765 F. Supp. 628, 629 (N.D.

5  Cal. 1991) ("Because Industrial Indemnity had not yet been served at the time that

6  First State filed its removal petition, the language of § 1441(b) mandates the finding

7  that this case was properly removed.").

8           7.    At the time of the filing of this action, John L. Clendenin was,

9  and still is, a resident of the state of Florida.

10          8.    Accordingly, all of the requirements of 28 U.S.C. § 1332 are

11  present and less then 30 days have elapsed between the filing of this suit and this

12  Notice of Removal as is required by 28 U.S.C. § 1446(b), therefore this action may

13  properly be removed to this Court under 28 U.S.C. § 1441(a).

14

15  Dated:  March 13, 2012                  SETH ARONSON
                                            AMY J. LONGO
16                                          KATHARINE S. MERCER
                                            O'MELVENY & MYERS LLP
17                                          400 S. Hope Street
                                            Los Angeles, CA 90071
18                                          (213) 430-6000 (Telephone)
                                            (213) 430-6407 (Facsimile)
19

20

21                                          By: *Amy Longo /ESM*
22                                             Amy J. Longo
                                             Attorneys for Defendant
23                                             John L. Clendenin

24

25

26

27

28

# EXHIBIT A

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Ronald J. Buschur (Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Jorge L. Verar, Derivatively on Behalf of Powerwave Technologies, Inc.

| FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
| --- |
| **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**03/07/2012** at 03:49:09 PM<br>Clerk of the Superior Court<br>By Enrique Veloz, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
| --- | --- |
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Orange County Superior Court<br>Civil Complex Center<br>751 W. Santa Ana Blvd., Santa Ana, CA 92701 | CASE NUMBER:<br>30-2012-00562065-CU-BT-CXC<br><br>Judge Nancy Wieben Stock |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Johnson & Weaver, LLP, Frank Johnson, 110 West A St., Ste. 750, San Diego, CA 92101 (619) 230-0063

| | | | |
| --- | --- | --- | --- |
| DATE: 03/07/2012   ALAN CARLSON, Clerk of the Court<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

Enrique Veloz

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* POWERWAVE TECHNOLOGIES, INC.

   under: [X] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)

   [ ] other *(specify):*
4. [X] by personal delivery on *(date):* 3-9-12

**SUMMONS**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Verar v. Buschur, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

Kevin T. Michaels, Moiz M. Beguwala, Ken J. Bradley, Richard E. Burns, John L. Clendenin, David L. George, Eugene L. Goda, and Carl W. Neun,

Defendants,

and

Powerwave Technologies, Inc.,

Nominal Defendant.

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

JOHNSON & WEAVER, LLP
Frank J. Johnson (SBN 174882)
frankj@johnsonandweaver.com
Shawn E. Fields (SBN 255267)
shawnf@johnsonandweaver.com
110 West "A" Street, Suite 750
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Attorneys for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
03/07/2012 at 03:49:09 PM
Clerk of the Superior Court
By Enrique Veloz, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| JORGE L. VERAR, derivatively on behalf of POWERWAVE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> RONALD J. BUSCHUR, KEVIN T. MICHAELS, MOIZ M. BEGUWALA, KEN J. BRADLEY, RICHARD E. BURNS, JOHN L. CLENDENIN, DAVID L. GEORGE, EUGENE L. GODA, and CARL W. NEUN, <br><br> Defendants, <br><br> and <br><br> POWERWAVE TECHNOLOGIES, INC., <br><br> Nominal Defendant. | Case No.: 30-2012-00552065-CU-BT-CXC <br><br> SHAREHOLDER DERIVATIVE COMPLAINT <br><br> DEMAND FOR JURY TRIAL <br><br> Judge Nancy Weben Stock |

SHAREHOLDER DERIVATIVE COMPLAINT

By and through his undersigned counsel, Plaintiff Jorge L. Verar ("Plaintiff") brings this shareholder derivative action on behalf of Powerwave Technologies, Inc. ("Powerwave" or the "Company") and against certain current and former officers and directors of the Company for breaches of fiduciary duties and unjust enrichment. Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which include, without limitation: a) review and analysis of public filings made by Powerwave and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; c) review of news articles, shareholder communications, postings on Powerwave's website concerning the Company's public statements; and d) review of other publicly available information concerning Powerwave and the Individual Defendants (defined herein).

## I.   INTRODUCTION

1.   Powerwave engages in the design, manufacture, marketing, and sale of wireless solutions for wireless communications networks worldwide. The Company offers antennas, boosters, combiners, cabinets, shelters, filters, radio frequency power amplifiers, remote radio head transceivers, repeaters, tower-mounted amplifiers, and advanced coverage solutions for use in frequency bands, including cellular, PCS, 3G, and 4G wireless communications networks.

2.   While Powerwave markets and sells a number of products related to cell phone towers, its core product is its widely sold antenna system. According to the Company's November 1, 2011, Form 10-Q filed with the SEC, antenna system sales accounted for 59% of the Company's revenues in the third quarter of 2011.

3.   From approximately February 1, 2011, to October 18, 2011 (the "Relevant Period"), the Individual Defendants caused the Company to make a series of materially misleading statements about its financial condition, including its quarterly revenues, its projected future revenues, and its free cash flows. In particular, throughout the Relevant

Period, the Individual Defendants caused the Company to publish numerous statements with the SEC outlining Powerwave's strong year-over-year earnings and projected earnings increases throughout 2011 and beyond.  However, in each of these statements the Individual Defendants failed to disclose two critically important known facts about Powerwave's operations:

      1)  That sales of its antenna systems were falling dramatically across the board, including drops of over 50% in the Company's North America, Asia Pacific, and Middle East markets; and

      2)  That, as a result, Powerwave was required to burn through its free cash flows as revenues declined and expenses increased.

4.     These material omissions caused Powerwave's stock to trade at artificially inflated prices throughout the Relevant Period, reaching a high of $23.45 on May 2, 2011.

5.     Finally, on October 18, 2011, the Individual Defendants were forced to reveal the truth about the Company's poor financial health.  In a press release and conference call disclosing the Company's third quarter 2011 financial results, the Individual Defendants released earnings well below analysts' expectations and their own previously issued guidance. The Individual Defendants finally disclosed that Powerwave was experiencing "a significant slowdown in spending by North American network operators," and that the Company was drawing heavily on its free cash flows to meet its financial obligations.

6.     Following this announcement, the share price of Powerwave's common stock nosedived, falling 42% from $1.46 to $0.85 on the heaviest recorded trading volume in the Company's history.

7.     The Powerwave Board of Directors ("Board") has not, and will not commence litigation against Defendants, let alone vigorously prosecute such claims, because they face a substantial likelihood of liability to Powerwave for authorizing or failing to correct the false and misleading statements alleged herein.  Accordingly, a pre-suit demand upon the Powerwave Board is a useless and futile act.  Thus, Plaintiff rightfully brings this action to

vindicate Powerwave's rights against its wayward fiduciaries and hold them responsible for the damages they have caused Powerwave.

## II.    JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to the California Constitution, Article VI, §10 and California Corporations Code §800. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court.

9.      A true and correct copy of this Complaint was delivered to Powerwave before its filing with the Court.

10.     Venue is proper in this Court because Powerwave has a substantial presence in California and is headquartered in Santa Ana, California. Moreover, each defendant has had extensive contacts with California as a director and/or officer of Powerwave or otherwise, which makes the exercise of personal jurisdiction over them proper.

## III.   THE PARTIES

11.     Plaintiff is a shareholder of Powerwave common stock and has continuously held the stock throughout the Relevant Period.

12.     Nominal Defendant Powerwave is a Delaware corporation with its principal place of business located at 1801 East Saint Andrew Place, Santa Ana, California 92705.

13.     Defendant Ronald J. Buschur ("Buschur") has been the Chief Executive Officer of Powerwave and a member of the Board since February 2005. Buschur joined the Company in June 2001 as Chief Operating Officer. In May 2004, Buschur became President of the Company.

14.     Defendant Kevin T. Michaels ("Michaels") is presently Chief Financial Officer and Secretary of Powerwave. Michaels joined the Company in June 1996 as Vice President, Finance and Chief Financial Officer and was appointed Secretary in June 1996. Michaels was named Senior Vice President, Finance in February 2000.

SHAREHOLDER DERIVATIVE COMPLAINT

15.     Defendant Moiz M. Beguwala ("Beguwala") has been a member of Powerwave's Board since December 2007.  Beguwala is currently a member of the Board's Compensation Committee and Nominating and Corporate Governance Committee.

16.     Defendant Ken J. Bradley ("Bradley") has been a member of Powerwave's Board since December 2007.  Bradley is currently a member of the Board's Audit Committee and Nominating and Corporate Governance Committee.

17.     Defendant Richard E. Burns ("Burns") has been a member of Powerwave's Board since March 2011.  Burns is currently a member of the Board's Audit Committee and Nominating and Corporate Governance Committee.

18.     Defendant John L. Clendenin ("Clendenin") has been a member of Powerwave's Board since February 2005.  Clendenin is currently a member of the Board's Audit Committee and Nominating and Corporate Governance Committee.

19.     Defendant David L. George ("George") has been a member of Powerwave's Board since November 1995.  George is currently a member of the Board's Compensation Committee and Nominating and Corporate Governance Committee.

20.     Defendant Eugene L. Goda ("Goda") has been a member of Powerwave's Board since November 1995.  Goda is currently a member of the Board's Compensation Committee and Nominating and Corporate Governance Committee.

21.     Defendant Carl W. Neun ("Neun") has been a member of Powerwave's Board since February 2000.  Neun is currently a member of the Board's Audit Committee and Nominating and Corporate Governance Committee.

22.     Defendants Buschur, Beguwala, Bradley, Burns, Clendenin, George, Goda, and Neun are all current Board members and are collectively referred to as the "Board" or the "Director Defendants."

23.     Defendants Buschur, Beguwala, Bradley, Burns, Clendenin, George, Goda, Neun, and Michaels are collectively referred to as the "Individual Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

24.    Powerwave engages in the design, manufacture, marketing, and sale of wireless solutions for wireless communications networks worldwide.  The Company offers antennas, boosters, combiners, cabinets, shelters, filters, radio frequency power amplifiers, remote radio head transceivers, repeaters, tower-mounted amplifiers, and advanced coverage solutions for use in frequency bands, including cellular, PCS, 3G, and 4G wireless communications networks.

25.    While Powerwave sells a number of different types of equipment, the Company's core product is its antenna system that Powerwave sells to wireless carriers such as Verizon, AT&T and Sprint.

### B.    The Individual Defendants Fail to Disclose to Investors the Company's Dramatically Declining Customer Demand

26.    On February 1, 2011, Powerwave issued a press release announcing its financial results for its fourth quarter, the period ending January 2, 2011.  For the quarter, the Company reported net sales of $175.6 million, compared to $142.6 million for the same period the prior year.  The press release included Defendant Buschur's comments on these results, who observed that, "[f]or the fourth quarter of 2010, we were able to show growth of 23% over the same period last year and 12% sequentially over the third quarter of this year." Defendant Buschur further stated that Powerwave expected this positive trend to continue into 2011 specifically because of continued growing customer demand:

> We continue to see signs of improvement in overall demand for wireless infrastructure equipment, driven globally by the continued increase in demand for smartphones and the requirements for faster data transmission rates. We are continuing to work to position Powerwave to capitalize on the long-term growth opportunities we believe are available within the global wireless infrastructure marketplace.

27.    Following the issuance of the press release, also on February 1, 2011, Powerwave held a conference call with analysts and investors to discuss the Company's earnings and operations.  During the conference call, Defendants Michaels and Buschur made

positive statements about the Company and its operations, and again emphasized that continued increased customer demand for Powerwave's products would continue to drive increased revenues throughout 2011.

28. Both the press release and the statements from the conference call were materially misleading because they failed to disclose that Powerwave's customer demand for its antenna systems in North America, as well as in the Middle East and Asia Pacific markets, was already falling dramatically, and thus were likely to negatively impact the Company's revenues and cash flows throughout 2011 and beyond.

29. Following the issuance of this misleading press release, the share price of Powerwave's stock began climbing steadily from $3.48 on February 1, 2011, to $4.66 on March 23, 2011.

30. On May 5, 2011, Powerwave issued a press release announcing its financial results for its first quarter, the period ending April 3, 2011. For the quarter, the Company reported net sales of $136.6 million, compared to $114.5 million for the same period the prior year. While Powerwave reported a year-over-year increase in net sales, the Individual Defendants recognized that these earnings results were slightly lower than previously projected and predicted by analysts. As a result, the press release quoted Defendant Buschur as stating that "[t]he first quarter revenue was impacted by delays we encountered ramping up one of our new LTE products. We believe that we have resolved the production issues that impacted our revenues for the first quarter."

31. Defendant Buschur continued that, with the production issue behind it, "[l]ooking ahead for the remainder of this year, we continue to believe that we are on track for meeting our annual revenue guidance." Defendant Buschur again discussed the Company's customer demand, stating that "[t]here are signs of improving demand for global wireless infrastructure for the remainder of 2011. We believe that Powerwave is in an excellent position to build upon and capture the long-term growth opportunities that are in the wireless infrastructure marketplace."

32.    Following the issuance of the press release on May 5, 2011, Powerwave held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendants Michaels and Buschur made numerous positive statements about the Company, its operations, and growing customer demand.

33.    This press release and conference call were materially misleading because they failed to disclose that the Company's customer demand for Powerwave's antenna systems, particularly in North America, was continuing to crater and was having a significant negative impact on earnings. The Individual Defendants' attempt to blame Powerwave's earnings miss on a one-time production issue was also materially misleading because it hid from investors the true cause of the Company's lower than expected revenues – declines in customer demand – and attempted to characterize any earnings miss as the result of a single event rather than a long-term systemic problem.

34.    On July 12, 2011, Powerwave issued a press release to provide a "Second Quarter Update." The Company reported that for its second fiscal quarter, the period ending July 3, 2011, it "anticipates that revenues for its fiscal second quarter ended July 3, 2011 will be in the range of $168 million to $172 million. This updates Powerwave's previously announced expectations of revenues for the second quarter." Defendant Buschur commented on the announcement, hinting to investors about "some slowness in several of our markets," but failing to offer any detail or make substantive comments regarding this "slowness." In fact, Defendant Buschur continued to make misleadingly upbeat comments about Powerwave's customer demand, stating that "in spite of [this] slowness," Powerwave was "able to increase revenues by over 24 percent from the first quarter . . . [and] we continue to believe that we are on track for meeting the bottom range of our 2011 annual revenue guidance of $650 to $680 million. We continue to believe that Powerwave is in an excellent position to build upon and capture the long-term growth opportunities that are in the wireless infrastructure marketplace."

35.     This press release was also materially misleading because it failed to disclose the continuing dramatic decline in customer demand of Powerwave's antenna systems. It also misled investors by failing to disclose that Powerwave was compensating for these declines by drawing heavily on its free cash flows, burning through its dwindling reserves.

36.     Following this announcement, the price of Powerwave common stock declined modestly from $2.33 to $2.10. However, the Individual Defendants' decision to hide the truth from investors in this press release kept the Company's stock from falling further.

37.     One week later, on July 20, 2011, in the first hint that the Company was experiencing cash flow problems, Powerwave issued a press release announcing that it had entered into a purchase agreement in which it would issue an aggregate of $100 million of 2.75% Convertible Senior Subordinated Notes due in 2014.

38.     On August 4, 2011, Powerwave issued a press release announcing its financial results for its second quarter, the period ending July 3, 2011. For the quarter, the Company reported net sales of $170.6 million, compared to $144.6 million for the same period the prior year. In the press release, the Individual Defendants stated that, "[w]hile we are concerned about global macroeconomic issues, we continue to believe that we have positioned Powerwave to be in an excellent position from which to build upon and capture both the short-term and long-term growth opportunities that are in the global wireless infrastructure marketplace."

39.     Following the issuance of the press release, on August 4, 2011, Powerwave held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendants Michaels and Buschur made positive statements about the Company and its operations.

40.     This press release and conference call were materially misleading because they failed to disclose that the Company's customer demand for its antenna systems, particularly, in the North American market, was falling dramatically and that the Company likely would be

1  unable to meet its FY 2011 guidance. They also failed to disclose that, as a result, Powerwave

2  was burning through its free cash flows to meet its obligations.

3    **C.**  **The Truth is Revealed**

4    41. Finally, on October 18, 2011, the Individual Defendants could no longer

5  conceal the truth from investors. On October 18, 2011, Powerwave issued a press release

6  announcing that "it anticipates that revenues for its fiscal third quarter ended October 2, 2011

7  will be in the range of $75 million to $79 million," reflecting an approximate *56% decline in*

8  *sequential revenues* from the second quarter of 2011. Defendant Buschur commented on the

9  announcement, stating, in pertinent part, as follows:

> Our third quarter revenues were impacted by several factors, which included a
> significant slowdown in spending by North American network operators, a
> significant reduction in activity with our original equipment manufacturing
> customers, coupled with further weakness in several international markets,
> including Western and Eastern Europe, and the Middle East[.] From a global
> perspective, we believe that the current economic environment has caused
> operators to reduce or postpone their spending plans for the near term while
> they evaluate the macro-economic pressures in each individual market. The
> Middle East market has been significantly impacted by the political unrest
> throughout the region. In addition, in the North American market we believe
> that the uncertainty arising from the government's recent opposition to the
> proposed merger of AT&T and T-Mobile, has led to delays in spending as these
> operators re-evaluate their capital spending plans. All of these factors,
> combined together, have had a significant impact on our third quarter revenues.
> While near term visibility remains difficult in our markets, we continue to
> believe that the long-term demand for improvements in wireless infrastructure
> remain strong, as global demand for data continues and wireless network
> operators continue to promote their plans to improve existing coverage and add
> additional capacity, in the form of 4G capabilities, to wireless networks across
> the globe. We believe that Powerwave remains positioned to build upon and
> capture the long-term growth opportunities that are in the wireless
> infrastructure marketplace.

  42. Following the issuance of the press release, Powerwave held a conference call

to discuss the announcement. During the conference call, Defendants Michaels and Buschur

admitted that the Company was performing poorly and burning through a substantial amount

of free cash.

SHAREHOLDER DERIVATIVE COMPLAINT

43.     In response to the announcement, on October 19, 2011, the price of Powerwave common stock declined from $1.46 per share to $0.85 per share, or 42%, on extremely heavy trading volume.

44.     On October 28, 2011, Powerwave issued a press release announcing that its Board had approved a 1-for-5 reverse stock split and a reduction in the number of authorized shares of its common stock.

45.     On November 1, 2011, Powerwave issued a press release announcing its financial results for its third fiscal quarter, the period ending October 2, 2011. The Company reported a net loss of $35.1 million, or a basic loss per share of $1.09. This press release further disclosed the extremely troubling news regarding the Company's previously undisclosed drops in customer demand and dwindling cash flows, including:

- Revenues: Year over year revenues dropped over 54% in the North America region, nearly 57% in the Asia Pacific region, and 41.5% in Europe, Africa, and the Middle East; and

- Cash Flows: The Company burned through $16 million in cash in the first three quarters, leaving it with only $46.6 million in cash reserves.

46.     Defendant Buschur commented on the results, stating, in pertinent part, as follows:

> As we have previously reported, our third quarter revenues were impacted by several factors, which included significant slowdowns in several of our markets, including North America, Western and Eastern Europe and the Middle East, as well as our original equipment manufacturing customers[.] From a global perspective, we believe that the current economic environment has caused operators to reduce or postpone their spending plans for the near term while they evaluate the macro-economic pressures in each individual market. While near term visibility remains difficult in our markets, we continue to believe that the long-term demand for improvements in wireless infrastructure remain strong, as global demand for data continues and wireless network operators continue to promote their plans to improve existing coverage and add additional capacity, in the form of 4G capabilities, to wireless networks across the globe. We are currently finalizing our restructuring plans in order to take the steps we believe necessary to maintain Powerwave's competitive position and continue to position Powerwave for long-term success.

## V.     DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.     Fiduciary Duties

47.     By reason of their positions as officers, directors, and/or fiduciaries of Powerwave and because of their ability to control the business and corporate affairs of Powerwave, the Individual Defendants owed and owe the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Powerwave in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Powerwave and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

48.     Each director and officer of the Company owes to Powerwave and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

### B. Audit Committee Duties

49.     In addition to these duties, the members of the Audit Committee owed specific duties to Powerwave under the Audit Committee's Charter to review and approve quarterly and annual financial statements, earnings press releases, and to ensure that the Company had appropriate and effective internal controls over financial reporting.  In particular, the Audit Committee's Charter provided as follows:

The responsibilities of the Audit Committee shall include:

☐ Reviewing on a continuing basis the adequacy of the Company's system of internal controls, including meeting periodically with the Company's management and the independent auditors

11

SHAREHOLDER DERIVATIVE COMPLAINT

to review the adequacy of such controls and to review before release the disclosure regarding such system of internal controls required under SEC rules to be contained in the Company's periodic filings and the attestations or reports by the independent auditors relating to such disclosure;

☐ Appointing, compensating, retaining and overseeing the work of the independent auditors (including resolving disagreements between management and the independent auditors regarding financial reporting) for the purpose of preparing or issuing an audit report, performing other audit, review or attest services or related work;

☐ Pre-approving audit and non-audit services provided to the Company by the independent auditors (or subsequently approving non-audit services in those circumstances where a subsequent approval is necessary and permissible); in this regard, the Audit Committee shall have the sole authority to approve the hiring and firing of the independent auditors, ensuring audit partner rotation in accordance with SEC rules, all audit engagement fees and terms, and all non-audit engagements, as may be permissible, with the independent auditors;

☐ Reviewing and providing guidance with respect to the external audit and the Company's relationship with its independent auditors by (i) reviewing the independent auditors' proposed audit scope, approach and independence; (ii) obtaining on a periodic basis a statement from the independent auditors regarding relationships and services with the Company which may impact independence and presenting this statement to the Board of Directors, and to the extent there are relationships, monitoring and investigating them; (iii) discussing with the Company's independent auditors the financial statements and audit findings, including any significant adjustments, management judgments and accounting estimates, significant new accounting policies and disagreements with management and any other matters described in SAS No. 61, as may be modified or supplemented; (iv) obtain from the independent auditor assurance that Section 10A(b) of the Exchange Act has not been implicated; and (v) reviewing reports submitted to the audit committee by the independent auditors in accordance with the applicable SEC requirements;

☐ Reviewing and discussing with management and the independent auditors the annual audited financial statements and quarterly unaudited financial statements, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to filing the Company's Annual Report on Form 10-K and Quarterly Reports on Form 10-Q, respectively, with the SEC;

☐ Directing the Company's independent auditors to review before filing with the SEC the Company's interim financial statements included in Quarterly Reports on Form 10-Q, using professional standards and procedures for conducting such reviews;

☐ Conducting a post-audit review of the financial statements and audit findings, including any significant suggestions for improvements provided to management by the independent auditors;

☐ Reviewing before release the unaudited quarterly operating results in the Company's quarterly earnings release;

☐ Overseeing compliance with the requirements of the SEC for disclosure of auditor's services and audit committee members, member qualifications and activities;

☐ Reviewing, approving and monitoring the Company's code of ethics for its directors, officers and employees which complies with the requirements of the NASD and the SEC;

☐ Reviewing with management the procedures adopted by management for making written descriptions of the Company's critical accounting policies and practices available to those employees who record or review the recording of revenue and in this regard, it shall be the policy of the Audit Committee to require management to make available such descriptions to those employees who record or review the recording of revenue;

☐ Reviewing, at each regularly scheduled meeting, all Company investments in securities and, at least annually, obtain a stress test or market-to-market valuation of such investments;

☐ Receiving and reviewing any complaints or reports by independent legal counsel regarding evidence of material violations of securities laws or breaches of fiduciary duties as required by SEC rules;

☐ Periodically reviewing any legal matters that could reasonably be expected to have a material impact on the Company's financial statements and shall meet as needed with the Company's independent legal counsel or other employees responsible oversight of litigation;

☐ Periodically reviewing the Company's guidelines and policies with respect to risk assessment and risk management guidelines and meet as needed with appropriate risk personnel;

☐ Overseeing and reviewing the Company's policies regarding information technology and management information systems;

☐ If necessary, instituting special investigations with full access to all books, records, facilities and personnel of the Company;

☐ As appropriate, obtaining advice and assistance from independent legal, accounting or other advisors and the Audit Committee shall have the authority to engage and determine funding for independent legal, accounting or other advisors;

☐ Reviewing and approving in advance any proposed related party transactions;

☐ Reviewing and assessing the adequacy of its own charter, structure, processes and membership requirements on an annual basis;

☐ Submit the Audit Committee charter to the Board of Directors for approval and have the charter published at least every three years per SEC rules;

☐ Providing a report in the Company's proxy statement in accordance with the rules and regulations of the SEC; and

☐ Establishing procedures for receiving, retaining and treating complaints received by the Company regarding accounting, internal accounting controls or auditing matters and procedures for the confidential, anonymous submission by employees of concerns regarding questionable accounting or auditing matters.

13

SHAREHOLDER DERIVATIVE COMPLAINT

**C.     Control, Access, And Authority**

50.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Powerwave, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Powerwave.

51.     Because of their advisory, executive, managerial, and directorial positions with Powerwave, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Powerwave.

52.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Powerwave, and was at all times acting within the course and scope of such agency.

**D.     Reasonable And Prudent Supervision**

53.     To discharge their duties, the officers and directors of Powerwave were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Powerwave were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(d)     remain informed as to how Powerwave conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or

practices and make such disclosures as necessary to comply with securities laws; and

(e)        ensure that Powerwave was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## VI.   BREACHES OF DUTIES

54.      Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to Powerwave and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of Powerwave, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Powerwave, the absence of good faith on their part, and a reckless disregard for their duties to Powerwave and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to Powerwave.

55.      The Individual Defendants each breached their duty of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements that misled shareholders into believing that demand for Powerwave's core antenna systems was growing and that Powerwave would experience revenue growth throughout 2011, when in fact demand was declining rapidly, requiring the Company to burn through its cash reserves. In addition, as a result of the Individual Defendants' illegal actions and course of conduct, the Company is now the subject of a class action lawsuit that alleges violations of the federal securities laws. As a result, Powerwave has expended, and will continue to expend, significant sums of money to rectify the Defendants' wrongdoing.

## VII.   CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

56.      In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert

1  with and conspired with one another in furtherance of their wrongdoing.  The Individual

2  Defendants further aided and abetted and/or assisted each other in breaching their respective

3  duties.

4        57.  During all times relevant hereto, the Individual Defendants collectively and

5  individually initiated a course of conduct that was designed to mislead shareholders into

6  believing that demand for Powerwave's core antenna systems was growing and that

7  Powerwave would experience revenue growth throughout 2011, when in fact demand was

8  declining rapidly, requiring the Company to burn through its cash reserves.  In furtherance of

9  this plan, conspiracy, and course of conduct, the Individual Defendants collectively and

10  individually took the actions set forth herein.

11        58.  The purpose and effect of the Individual Defendants' conspiracy, common

12  enterprise, and/or common course of conduct was, among other things, to: (a) disguise the

13  Individual Defendants' violations of law, including breaches of fiduciary duty and unjust

14  enrichment; and (b) disguise and misrepresent the Company's future business prospects.

15        59.  The Individual Defendants accomplished their conspiracy, common enterprise,

16  and/or common course of conduct by causing the Company to purposefully, recklessly, or

17  negligently release improper statements.  Because the actions described herein occurred under

18  the authority of the Board, each of the Individual Defendants was a direct, necessary, and

19  substantial participant in the conspiracy, common enterprise, and/or common course of

20  conduct complained of herein.

21        60.  Each of the Individual Defendants aided and abetted and rendered substantial

22  assistance in the wrongs complained of herein.  In taking such actions to substantially assist

23  the commissions of the wrongdoing complained of herein, each Individual Defendant acted

24  with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

25  wrongdoing, and was aware of his or her overall contribution to and furtherance of the

26  wrongdoing.

27

28

## VIII.  DAMAGES TO POWERWAVE

61.    As a result of the Individual Defendants' wrongful conduct, Powerwave disseminated false and misleading statements.  The improper statements have devastated Powerwave's credibility.  Additionally, Powerwave is now the subject of a securities fraud class action lawsuit.  The Company will face substantial costs in connection with an investigation and the lawsuit.

62.    As a direct and proximate result of the Individual Defendants' actions as alleged above, Powerwave's market capitalization has been substantially damaged.

63.    Further, as a direct and proximate result of the Individual Defendants' conduct, Powerwave has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

a.    costs incurred in investigating and defending Powerwave and certain officers in a class action lawsuit, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment;

b.    costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on Powerwave artificially-inflated stock price and inflated revenues; and

c.    costs incurred from the loss of the Company's customers' confidence in Powerwave services.

64.    Moreover, these actions have irreparably damaged Powerwave's corporate image and goodwill.  For at least the foreseeable future, Powerwave will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Powerwave's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## IX.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

65.   Plaintiff brings this action derivatively in the right and for the benefit of Powerwave to redress injuries suffered, and to be suffered, by Powerwave as a direct result of the Individual Defendants' breaches of fiduciary duty and unjust enrichment by the Individual Defendants. Powerwave is named as a nominal defendant solely in a derivative capacity.

66.   Plaintiff will adequately and fairly represent the interests of Powerwave in enforcing and prosecuting its rights.

67.   Plaintiff was a shareholder of Powerwave common stock at the time of the wrongdoing of which Plaintiff complains and has been continuously since.

68.   Plaintiff did not make a pre-suit demand on the Board to pursue this action, because such a demand would have been a futile and wasteful act.

69.   The Board of Powerwave currently consists of the following eight Defendants: Buschur, Beguwala, Bradley, Burns, Clendenin, George, Goda, and Neun.

### A.   Demand Is Futile As To Defendant Buschur

70.   Defendant Buschur faces a substantial likelihood of liability for his individual misconduct. Buschur is a named defendant in a federal class action pending in the Central District of California alleging that he and the Company violated §10(b) of the 1934 Act and Rule 10b-5 when he disseminated or approved false statements.

71.   If Defendant Buschur pursued these derivative claims, then that would expose his own misconduct in the class action for violations of the federal securities laws. This, in turn, would impair the defense of the class action and greatly increase the probability of Defendant Buschur's personal liability in the class action. As such, Defendant Buschur is fatally conflicted, and therefore, unable to render a disinterested decision as to whether the Company should pursue these derivative claims. Thus, demand is futile as to Defendant Buschur.

72.   Additionally, Defendant Buschur cannot render an independent decision because he is and was a high-ranking officer of Powerwave during the time period when the

18

1    wrongdoing occurred.   Defendant Buschur has served as the Chief Executive Officer of
2    Powerwave since February 2005.   According to relevant portions of the Company's 2011
3    proxy statement, Defendant Buschur is not an independent director.   Thus, Defendant Buschur
4    is a current Company insider and therefore cannot independently consider a demand.

5        73.    Additionally, Defendant Buschur is interested because he issued many of the
6    misleading statements.   Defendant Buschur therefore faces a substantial likelihood of liability
7    for breaching his fiduciary duties to Powerwave shareholders.   Consequently, Defendant
8    Buschur cannot disinterestedly consider a demand.

9    **B.    Demand Is Futile As To Defendant Beguwala**

10       74.    Defendant Beguwala faces a substantial likelihood of liability for his individual
11   misconduct.   Defendant Beguwala was a director throughout the Relevant Period, and as such
12   had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases,
13   and other public statements on behalf of the Company were true.   Instead, he reviewed and
14   authorized the publication of materially false and misleading statements throughout the
15   Relevant Period that caused the Company's stock to trade at artificially inflated prices.   This
16   authorization of such statements and/or failure to correct them constitutes a breach of fiduciary
17   duty, for which Defendant Beguwala faces a substantial likelihood of liability.   For this reason
18   demand is futile.

19   **C.    Demand Is Futile As To Defendant Bradley**

20       75.    Defendant Bradley faces a substantial likelihood of liability for his individual
21   misconduct.   Defendant Bradley was a director throughout the Relevant Period, and as such
22   had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases,
23   and other public statements on behalf of the Company were true.   Instead, he reviewed and
24   authorized the publication of materially false and misleading statements throughout the
25   Relevant Period that caused the Company's stock to trade at artificially inflated prices.   This
26   authorization of such statements and/or failure to correct them constitutes a breach of fiduciary
27
28

duty, for which Defendant Bradley faces a substantial likelihood of liability. For this reason demand is futile.

76. Defendant Bradley, as an Audit Committee member, was responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and Powerwave's internal controls over financial reporting. Despite these duties, Defendant Bradley knowingly or recklessly reviewed and approved false financial statements and press releases. Accordingly, Defendant Bradley faces a sufficiently substantial likelihood of liability for breach of his fiduciary duties of loyalty and good faith. Any demand upon this Defendant is futile.

**D.     Demand Is Futile As To Defendant Burns**

77. Defendant Burns faces a substantial likelihood of liability for his individual misconduct. Defendant Burns was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true. Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Burns faces a substantial likelihood of liability. For this reason demand is futile.

78. Defendant Burns, as an Audit Committee member, was responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and Powerwave's internal controls over financial reporting. Despite these duties, Defendant Burns knowingly or recklessly reviewed and approved false financial statements and press releases. Accordingly, Defendant Burns faces a sufficiently substantial likelihood of liability for breach of his fiduciary duties of loyalty and good faith. Any demand upon this Defendant is futile.

**E.     Demand Is Futile As To Defendant Clendenin**

79.     Defendant Clendenin faces a substantial likelihood of liability for his individual misconduct. Defendant Clendenin was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true. Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Clendenin faces a substantial likelihood of liability. For this reason demand is futile.

80.     Defendant Clendenin, as an Audit Committee member, was responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and Powerwave's internal controls over financial reporting. Despite these duties, Defendant Clendenin knowingly or recklessly reviewed and approved false financial statements and press releases. Accordingly, Defendant Clendenin faces a sufficiently substantial likelihood of liability for breach of his fiduciary duties of loyalty and good faith. Any demand upon this Defendant is futile.

**F.     Demand Is Futile As To Defendant George**

81.     Defendant George faces a substantial likelihood of liability for his individual misconduct. Defendant George was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true. Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant George faces a substantial likelihood of liability. For this reason demand is futile.

21

### G.   Demand Is Futile As To Defendant Goda

82.   Defendant Goda faces a substantial likelihood of liability for his individual misconduct. Defendant Goda was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.   Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Goda faces a substantial likelihood of liability.   For this reason demand is futile.

### H.   Demand Is Futile As To Defendant Neun

83.   Defendant Neun faces a substantial likelihood of liability for his individual misconduct. Defendant Neun was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.   Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Neun faces a substantial likelihood of liability.   For this reason demand is futile.

84.   Defendant Neun, as an Audit Committee member, was responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and Powerwave's internal controls over financial reporting.  Despite these duties, Defendant Neun knowingly or recklessly reviewed and approved false financial statements and press releases. Accordingly, Defendant Neun faces a sufficiently substantial likelihood of liability for breach of his fiduciary duties of loyalty and good faith. Any demand upon this Defendant is futile.

### I.  Demand Is Futile As To All Directors For Additional Reasons

85.  If Powerwave's current officers and directors are protected against personal liability for their acts of mismanagement, abuse of control, and breaches of fiduciary duties alleged in this Complaint by D&O Insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders. However, Plaintiff is informed and believes that the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by Powerwave against the Individual Defendants, known as the "insured versus insured exclusion." As a result, if the Director Defendants were to sue themselves or certain of the officers of Powerwave, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. Therefore, the Director Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

86.  Under the factual circumstances described herein, the Individual Defendants are more interested in protecting themselves than they are in protecting Powerwave by prosecuting this action. Therefore, demand on Powerwave and its Board is futile and is excused.

87.  Powerwave has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing. Yet, the Director Defendants have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct. Thus, the Director Defendants are breaching their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches, rendering any demand upon them futile.

88.  A true and correct copy of this complaint was delivered to Powerwave prior to being filed with this Court.

## COUNT I

### Against The Individual Defendants For Breach Of Fiduciary Duty

89.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.    The Individual Defendants owed and owe Powerwave fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Powerwave the highest obligation of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

91.    The Individual Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

92.    The Individual Defendants each knowingly, recklessly or negligently approved the issuance of false statements that misrepresented and failed to disclose material information concerning the Company.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

93.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Powerwave has sustained significant damages.  As a result of the misconduct alleged herein, these Defendants are liable to the Company.

94.    Plaintiff, on behalf of Powerwave, has no adequate remedy at law.

## COUNT II

### Against The Individual Defendants For Unjust Enrichment

95.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Powerwave.

97.    The Individual Defendants were unjustly enriched as a result of the compensation they received while breaching their fiduciary duties owed to Powerwave.

24

98.     Plaintiff, as a shareholder and representative of Powerwave, seeks restitution from these Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by these Defendants from their wrongful conduct and fiduciary breaches.

99.     Plaintiff, on behalf of Powerwave, has no adequate remedy at law.

## X.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all the Individual Defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' violations of federal securities laws, breaches of fiduciary duties, and unjust enrichment;

B.     Directing Powerwave to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Powerwave and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

- a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- a provision to permit the shareholders of Powerwave to nominate at least two candidates for election to the Board;

- a proposal to ensure the accuracy of the qualifications of Powerwave's directors, executives and other employees;

- a proposal to strengthen the Company's procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal controls and auditing matters; and

- a provision to appropriately test and then strengthen the internal audit and control functions;

1    C.    Awarding to Powerwave restitution from the Individual Defendants, and each

2    of them, and ordering disgorgement of all profits, benefits and other compensation obtained by

3    the Individual Defendants;

4    D.    Awarding to Plaintiff the costs and disbursements of the action, including

5    reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

6    E.    Granting such other and further relief as the Court deems just and proper.

7  **XI.    JURY DEMAND**

8

9    Plaintiff demands a trial by jury.

10   Dated: March 7, 2012

                                    JOHNSON & WEAVER, LLP

                                    By: _____
                                           FRANK J. JOHNSON

                                    *Attorneys for Plaintiff*

SHAREHOLDER DERIVATIVE COMPLAINT

CM-010

| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address): | **FOR COURT USE ONLY** |
|---|---|
| JOHNSON & WEAVER, LLP<br>Frank J. Johnson (174882)/Shawn E. Fields (255267)<br>110 West "A" Street, Suite 750<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 230-0063  FAX NO.: (619) 255-1856<br>ATTORNEY FOR (Name): Plaintiff Jorge L. Verar | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**03/07/2012** at 03:40:09 PM<br>Clerk of the Superior Court<br>By Enrique Veloz, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE COUNTY
STREET ADDRESS: 751 W. Santa Ana Blvd.
MAILING ADDRESS: 751 W. Santa Ana Blvd.
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Civil Complex Center

CASE NAME:
Jorge L. Verar v. Ronald J. Buschur, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2012-00562066-CU-BT-CXC |
| | | | JUDGE: |
| | | | DEPT: Judge Nancy Wieben Stock |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Mass tort (40) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [✓] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [ ] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): (2): Breach of Fiduciary Duty, Unjust Enrichment
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 7, 2012
Frank J. Johnson
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

## NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.**

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

## ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

## BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

## DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

**Loss of protections.** If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

**Less discovery.**  There generally is less opportunity to find out about the other side's case with ADR than with litigation.  ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.**  The neutral may charge a fee for his or her services.  If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.**  Lawsuits must be brought within specified periods of time, known as statues of limitation.  Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

**TYPES OF ADR IN CIVIL CASES.**

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.**  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

  **Cases for Which Arbitration May Be Appropriate.**  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

  **Cases for Which Arbitration May <u>Not</u> Be Appropriate.**  If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.**  In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

  **Cases for Which Mediation May Be Appropriate.**  Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

  **Cases for Which Mediation May <u>Not</u> Be Appropriate.**  Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.**  In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate.**   Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate.**   Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.**  Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**ADDITIONAL INFORMATION.**

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials.  Sometimes parties will try a combination of ADR types.  The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the Yellow Pages under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA) For information regarding DRPA, contact:
- Community Service Programs, Inc. (949) 851-3168
- Orange County Human Relations (714) 834-7198

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE).  For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session.  For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session.  Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) pilot programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address):* | *FOR COURT USE ONLY* |
|---|---|
| Telephone No.:                    Fax No. (Optional):<br>E-Mail Address (Optional):<br>ATTORNEY FOR *(Name):*                    Bar No: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
JUSTICE CENTER:
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251
☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13ᵗʰ Street, Westminster, CA 92683-0500

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s),_____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐   Mediation

☐   Arbitration (must specify code)
        ☐ Under section 1141.11 of the Code of Civil Procedure
        ☐ Under section 1280 of the Code of Civil Procedure

☐   Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an *Order on Court Fee Waiver* (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____

     _____    _____
     (SIGNATURE OF PLAINTIFF OR ATTORNEY)   (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____

     _____    _____
     (SIGNATURE OF DEFENDANT OR ATTORNEY)   (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

✓ *Plaintiff must serve a copy of these Guidelines with the Summons and Complaint.*



# GUIDELINES

## ALL COMPLEX CIVIL DEPARTMENTS

Welcome to the Complex Civil Litigation Program.  Orange County Superior Court is one of six courts designated by the California Judicial Council as pilot project courts to handle solely complex civil litigation.  These pilot courts were established to apply case management principles to improve the effective administration of justice by reducing the time and expense normally associated with the litigation of complex civil cases.  It has been our experience that these principles make it easier to prepare these cases for trial by providing a more orderly framework for the pre-trial phase of the litigation.

The result is a greater opportunity for early case resolution through mediation and settlement, and improving the way complex cases are tried by encouraging the use of technology.

Counsel's familiarity with the applicable *California Rules of Court ["Local Rules"]*, *Local Rules – Superior Court of California, County of Orange*, and these *Guidelines* is expected.  The *Guidelines* should answer most procedural questions and assist you in feeling comfortable in our courtrooms.

### COURTROOM DEMEANOR, CONDUCT AND ETIQUETTE

Counsel are expected to adhere to the provisions of the *California Attorney Guidelines of Civility and Professionalism*.  (State Bar of the State of California, adopted July 20, 2007, attached to these *Guidelines* as Appendix 1.)

1

## I. GENERAL MATTERS

1. When issued by the court, the provisions of the Case Management Order in the particular action shall govern over these *Guidelines*. Procedural matters not provided for in these *Guidelines* or in a Case Management Order shall be governed by the pertinent provisions of the California statutes, the California Rules of Court, and the California Standards of Judicial Administration. The purpose of these *Guidelines* is to supplement but not contradict the law governing civil procedure.

2. The Superior Court of California, County of Orange has established a system for e-filing in accordance with Code of Civil Procedure §1010.6 and California Rules of Court, rule 2.250 *et seq.* All papers filed in complex civil cases must be electronically filed unless a party has been specifically excused by the Court from the requirement, pursuant to the *Local Rules – Superior Court of California, County of Orange* ("local rules"), rule 308. To register for the program and to obtain additional information, go to: www.occourts.org/complexcivil/ .

3. Cross-complainants must serve a copy of these guidelines and give notice of any scheduled hearings and depositions at the time the cross-complaint is served.

4. Information about filing requirements or fees is available on the court's Internet home page at: http://www.occourts.org, or by telephone at (657) 622-5314. The local rules are available on the court's public internet home page.

5. Telephone appearances are conducted through **CourtCall**, pursuant to the provisions of California Rules of Court, Rule 3.670. Parties are encouraged to seek further information concerning guidelines and protocols from **CourtCall** at (310) 342-0888 or (888) 88-COURT.

## II. Initial Case Management Conference:

The Initial Case Management Conference shall take place in conformance with the requirements set forth in California Rules of Court, rule 3.750. The Initial Case Management Conference is generally scheduled approximately 90 days after the action is filed. Plaintiff is required to give notice of this conference date to all other parties. Thereafter, Status Conferences shall be set in consultation with the Court, according to the needs of the parties.

## III. Case Management Conference and Status Conference Statements:

The judges of the Civil Complex Center have determined that Judicial Council form CM-110, *Civil Case Management Statement* required by California Rules of Court, Rule 3.725(c) for some civil cases, is inadequate to provide the judges the information they need when determining how a particular complex case should be managed. *Form CM-110 should not be used in any action designated or provisionally designated as*

*complex.* Instead, the parties shall file with the court either a Case Management Conference Statement or a Status Conference Statement as described below.

Counsel must file an updated Conference Statement for *each* Case Management or Status Conference. The Conference Statement is due no later than 5 court days prior to the hearing.

A Status Conference Statement may be filed as an alternative to the Case Management Conference Statement when appropriate. A Status Conference Statement is generally less detailed than a Case Management Conference Statement and is to be used to advise the court of progress or developments in the case which have occurred since the last review hearing.

A joint statement of the parties is preferred by the court whenever possible.

## IV. CASE MANAGEMENT ORDERS:

Case Management Orders are not required in all cases, but they may be helpful in cases where the sequencing and timing of key events is necessary in the management of the litigation and preparation of the case for trial. However, even if a Case Management Order is not necessary in a particular case, *all complex cases must be managed by counsel, or the court, or both.*

The goal of case management is to bring about a just resolution as speedily and economically as possible. To be effective, case management should be tailored to the needs of the particular litigation and to the resources available; make-work activity should be avoided. The parties or the court should develop and monitor an effective plan for the orderly conduct of pretrial and trial proceedings. A case management plan should prescribe a series of procedural steps, with firm dates, giving direction and order to the case as it progresses through pretrial proceedings to summary disposition or trial. The setting of interim time limits and deadlines is often a necessary part of an effective case management plan.

## V. LAW AND MOTION:

1. **Meet and Confer**: This court adopts the view that pre-filing conferences between counsel may be useful in avoiding useless or unnecessary motions. Therefore, prior to the hearing of any motion, petition or application, except applications to appear *pro hac vice* and motions to withdraw as counsel of record, all counsel and parties appearing in *propria persona* shall confer in a good faith attempt to eliminate the necessity of the hearing or resolve as many disputes as possible.

   Counsel for the moving party shall arrange the conference to meet and confer and, at least 3 calendar days before the hearing, file with the court a statement entitled "Meet and Confer," summarizing the issues remaining in dispute and the respective positions taken.

2.  **Tentative Rulings**: Members of the Complex Civil Panel may publish tentative law and motion rulings by any system described in Local Rule 382.

3.  **Off Calendars and Continuances**: In order to promote judicial economy and avoid wasting court resources, counsel for moving parties must notify the courtroom clerk as soon as possible if any matter will be taken off calendar. Stipulations between the parties to continue a matter must be approved by the court.

## VI. EX PARTE APPLICATIONS:

1.  The court's consideration of an *ex parte* application will not interfere with or delay any trial in progress. The moving party is expected to adhere to the provisions of California Rules of Court, Rule 3.1200 – 3.1207. All papers necessary to the determination of the application, including any proposed pleading, motion or order, must be submitted with the *ex parte* application. Counsel should contact the courtroom clerk to verify any specific deadlines for the submission of moving papers or other preferences applicable to that department. Counsel may also contact the courtroom clerk to inquire if oral argument will be permitted, or if the court will rule based on the application and any written opposition.

2.  The application shall include a declaration of Notice of Ex Parte Hearing and a proposed order; and shall state in the notice the irreparable harm, immediate danger or other basis for *ex parte* relief that will result if the requested relief is not granted until a regularly noticed motion may be heard.

## VII. MANDATORY SETTLEMENT CONFERENCES ("MSC's"):

Compliance with Local Rule 316 is required.

All of the judges at the Civil Complex Center are willing to help another judge in the settlement of a complex case depending upon the judge's available calendar. If the parties agree to have a mandatory settlement conference conducted by a judge other than the assigned judge, the parties should first determine the other judge's availability before asking the assigned judge to order the settlement conference. However, it is not presumed that the judge to whom a case is assigned should not conduct the mandatory settlement conferences in his or her cases. If a party objects to the trial judge's participation in the MSC, the party must advise the judge or the courtroom clerk of its objection prior to the setting of the MSC. Counsel are advised to check with the court to determine its preference in this regard.

## VIII. Pre-trial Conferences

1.  A Pre-trial Conference may be scheduled 30-90 days before trial for the purpose of determining the readiness of the parties and     resolving procedural issues concerning the trial. The goal of the Pre-trial Conference is to make the trial proceed as predictably and smoothly as possible. **The Pre-trial**

4

Conference is not a substitute for the Issues Conference required by Local Rule 317.

2. At the Pre-trial Conference, counsel should be prepared to state whether his or her client will be using the electronic presentation of evidence at the trial. Using electronic equipment to present evidence at trial requires preparation, organization and cooperation by the parties. The court expects that the parties will work together in devising a protocol for the pre-marking of exhibits by using prefixes or a super-numeration system to designate the proponent of the evidence. Where there are multiple pages to a single exhibit, each page should be bates-stamped. Counsel should contact the courtroom clerk to determine if the trial judge has a specific preference for how exhibits should be marked.

3. In a case where it is reasonable to presume voluminous documents will be produced during discovery, counsel are urged to agree upon a protocol for the pre-marking of exhibits at the earliest time possible, preferably before the initiation of discovery and delivery to a document depository. It is less expensive to mark and index voluminous documents as they are deposited than when it is done on the eve of trial.

4. Counsel are required to cooperate throughout the trial so that one party's electronic exhibits are available to the other side to display during cross-examination.

5. The electronic version of documents, photographs, charts or other demonstrative evidence may be substituted for the actual exhibit at trial upon the stipulation of the parties and order of the court. This guideline is not meant to alter the rules of discovery or the obligation of a party to make available the original of a document for inspection by another party through discovery or at the Issues Conference.

6. Physical exhibits and documents are not required to be presented in a digitalized format. However, evidence which has not been presented in electronic form customarily will be ordered by the court returned at the end of the appeal period to the party which offered it. Before trial commences, counsel will be asked to sign a stipulation for the return and maintenance of the exhibits. Plaintiff will maintain joint exhibits unless the court orders otherwise.

## IX. Use of the Court's Evidence Presentation Systems

1. **On-Site Electronic Evidence Presentation Systems:** Every courtroom has the capability of being equipped with court-based evidence presentation systems for use by the parties. Counsel are strongly encouraged to take advantage of the benefits of the electronic presentation of evidence when in trial at the Civil Complex Center to enhance the orderly and effective presentation of evidence, reduce concerns about the custody and security of exhibits, and reduce the work and expense associated with the tagging, storing and transporting of exhibits. In an appropriate case, the court may require the

use of an electronic evidence presentation system.   Electronic evidence presentation systems must be compatible with the court's infrastructure (video distribution amplifier, wiring, conduit, floor receptacles and connectors).

2. **Electronic Evidence Standard Format:** Counsel presenting evidence that is exclusively electronic in form must present the evidence in PDF file format and stored on CD-R.  Whenever evidence is presented electronically, the physical custody of exhibits by the clerk is replaced by the electronic record of the exhibits.  Evidence must be in sequential order with the exception of JPEG and MPEG files which shall be stored on separate discs.  Counsel may also prepare electronic evidence using alternate non-proprietary formats subject to the approval of the court.  The compact discs (CDs) must be labeled as follows:

Case #
Case Name
Exhibits _____ to _____
(Original or Backup copy)

The courtroom clerk will maintain an updated exhibit list.  When evidence is electronically presented at the trial, the court may require counsel to periodically submit to the clerk an up-to-date CD containing exhibits received into evidence.

It is counsels' responsibility to identify and track redactions, modifications, and substitution of exhibits.  Counsel are expected to be prepared to submit an up-to-date evidence CD with all redactions, modifications, and substitutions, as well as impeachment documents used, upon the courtroom clerk's request.

Impeachment exhibits are not pre-marked.  However, counsel are responsible for having the document electronically recorded upon being offered into evidence (exhibit numbers may be reserved for this purpose).

If the jury will be provided the evidence in electronic format for its deliberation, the parties are required to meet and confer and submit the final joint exhibit list containing only those exhibits received into evidence.  The CD used by the jurors must include the joint exhibit list and the electronically stored exhibits which have been entered into evidence.  Submission of the joint evidence CD also serves as a stipulation that all exhibits presented in electronic form to the jury are complete and correct.  Any disagreement must be brought to the attention of the court at the earliest reasonable time.  Counsel must lodge two (2) evidence CDs of all exhibits received into evidence.

## X. TRIALS – MOTIONS IN LIMINE

Counsel should attempt to resolve evidentiary disputes at the Local Rule 317 Issues Conference before resorting to filing a motion *in limine*.  It is frequently more productive of court time, and the client's money for counsel to informally address at the Issues Conference the issues which could be raised in motions *in limine* and, instead of a motion, present a stipulation to the court on uncontested issues.  Matters of day-to-day

trial logistics and common professional courtesy should not be the subject of motions *in limine*.  These are matters of common professional courtesy that should be accorded counsel in all trials. See, <u>Kelly v. New West Federal Savings</u> (1996) 49 Cal.App.4th 659,671.

APPENDIX 1
## California Attorney Guidelines of Civility and Professionalism
(Abbreviated, adopted July 20, 2007)

INTRODUCTION. As officers of the court with responsibilities to the administration of justice, attorneys have an obligation to be professional with clients, other parties and counsel, the courts and the public. This obligation includes civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, and cooperation, all of which are essential to the fair administration of justice and conflict resolution.

These are guidelines for civility. The Guidelines are offered because civility in the practice of Law promotes both the effectiveness and the enjoyment of the practice and economical client representation. The legal profession must strive for the highest standards of attorney behavior to elevate and enhance our service to justice. Uncivil or unprofessional conduct not only disserves the individual involved, it demeans the profession as a whole and our system of justice.

These voluntary Guidelines foster a level of civility and professionalism that exceed the minimum requirements of the mandated Rules of Professional Conduct as the best practices of civility in the practice of law in California. The Guidelines are not intended to supplant these or any other rules or laws that govern attorney conduct. Since the Guidelines are not mandatory rules of professional conduct, nor rules of practice, nor standards of care, they are not to be used as an independent basis for disciplinary charges by the State Bar or claims of professional negligence.

The Guidelines are intended to complement codes of professionalism adopted by bar associations in California. Individual attorneys are encouraged to make these guidelines their personal standards by taking the pledge that appears at the end. The Guidelines can be applicable to all lawyers regardless of practice area. Attorneys are encouraged to comply with both the spirit and letter of these guidelines, recognizing that complying with these guidelines does not in any way denigrate the attorney's duty of zealous representation.

SECTION 1. The dignity, decorum and courtesy that have traditionally characterized the courts and legal profession of civilized nations are not empty formalities. They are essential to an atmosphere that promotes justice and to an attorney's responsibility for the fair and impartial administration of justice.

SECTION 2. An attorney should be mindful that, as individual circumstances permit, the goals of the profession include improving the administration of justice and contributing time to persons and organizations that cannot afford legal assistance.

An attorney should encourage new members of the bar to adopt these guidelines of civility and professionalism and mentor them in applying the guidelines.

SECTION 3. An attorney should treat clients with courtesy and respect, and represent them in a civil and professional manner. An attorney should advise current and potential clients that it is not acceptable for an attorney to engage in abusive behavior or other conduct unbecoming a member of the bar and an officer of the court.

As an officer of the court, an attorney should not allow clients to prevail upon the attorney to engage in uncivil behavior.

An attorney should not compromise the guidelines of civility and professionalism to achieve an advantage.

SECTION 4. An attorney's communications about the legal system should at all times reflect civility, professional integrity, personal dignity, and respect for the legal system. An attorney should not engage in conduct that is unbecoming a member of the Bar and an officer of the court.

Nothing above shall be construed as discouraging the reporting of conduct that fails to comply with the Rules of Professional Conduct.

SECTION 5. An attorney should be punctual in appearing at trials, hearings, meetings, depositions and other scheduled appearances.

SECTION 6. An attorney should advise clients that civility and courtesy in scheduling meetings, hearings and discovery are expected as professional conduct.

In considering requests for an extension of time, an attorney should consider the client's interests and need to promptly resolve matters, the schedules and willingness of others to grant reciprocal extensions, the time needed for a task, and other relevant factors.

Consistent with existing law and court orders, an attorney should agree to reasonable requests for extensions of time that are not adverse to a client's interests.

SECTION 7. The timing and manner of service of papers should not be used to the disadvantage of the party receiving the papers.

SECTION 8. Written materials directed to counsel, third parties or a court should be factual and concise and focused on the issue to be decided.

SECTION 9. Attorneys are encouraged to meet and confer early in order to explore voluntary disclosure, which includes identification of issues, identification of persons with knowledge of such issues, and exchange of documents.

Attorneys are encouraged to propound and respond to formal discovery in a manner designed to fully implement the purposes of the California Discovery Act.

An attorney should not use discovery to harass an opposing counsel, parties or witnesses. An attorney should not use discovery to delay the resolution of a dispute.

SECTION 10. An attorney should consider whether, before filing or pursuing a motion, to contact opposing counsel to attempt to informally resolve or limit the dispute.

SECTION 11. It is important to promote high regard for the profession and the legal system among those who are neither attorneys nor litigants. An attorney's conduct in dealings with nonparty witnesses should exhibit the highest standards of civility.

SECTION 12. In a social setting or otherwise, an attorney should not communicate ex parte with a judicial officer on the substance of a case pending before the court, unless permitted by law.

SECTION 13. An attorney should raise and explore with the client and, if the client consents, with opposing counsel, the possibility of settlement and alternative dispute resolution in every case as soon possible and, when appropriate, during the course of litigation.

SECTION 14. To promote a positive image of the profession, an attorney should always act respectfully and with dignity in court and assist the court in proper handling of a case.

SECTION 15. An attorney should not take the default of an opposing party known to be represented by counsel without giving the party advance warning.

SECTION 16. An attorney should avoid even the appearance of bias by notifying opposing counselor an unrepresented opposing party of any close, personal relationships between the attorney and a judicial officer, arbitrator, mediator or court-appointed expert and allowing a reasonable opportunity to object.

SECTION 17. An attorney should respect the privacy rights of parties and non-parties.

SECTION 18. An attorney should negotiate and conclude written agreements in a cooperative manner and with informed authority of the client.

In addition to other applicable Sections of these Guidelines, attorneys engaged in a transactional practice have unique responsibilities because much of the practice is conducted without judicial supervision.

SECTION 19. In addition to other applicable Sections of these Guidelines, in family law proceedings an attorney should seek to reduce emotional tension and trauma and encourage the parties and attorneys to interact in a cooperative atmosphere, and keep the best interests of the children in mind.

SECTION 20. In addition to other applicable Sections of these Guidelines, criminal law practitioners have unique responsibilities. Prosecutors are charged with seeking justice, while defenders must zealously represent their clients even in the face of seemingly overwhelming evidence of guilt. In practicing criminal law, an attorney should appreciate these roles.

SECTION 21. Judges are encouraged to become familiar with these Guidelines and to support and promote them where appropriate in court proceedings.

---

ATTORNEY'S PLEDGE. I commit to these Guidelines of Civility and Professionalism and will be guided by a sense of integrity, cooperation and fair play.

I will abstain from rude, disruptive, disrespectful, and abusive behavior, and will act with dignity, decency, courtesy, and candor with opposing counsel, the courts and the public.

As part of my responsibility for the fair administration of justice, I will inform my clients of this commitment and, in an effort to help promote the responsible practice of law, I will encourage other attorneys to observe these Guidelines.

(Rev. May 4, 2010)



**CIVIL MANAGEMENT**

CIVIL OPERATIONS
(657) 622-5300

# Superior Court of California
# County of Orange

January 14, 2011

## NOTICE RE: BOOKMARKING OF EXHIBITS ON ELECTRONICALLY FILED DOCUMENTS

Effective March 1, 2011, all electronically filed law and motion documents must have all exhibits bookmarked. Law and motion documents submitted on and after March 1 that are not bookmarked will be returned to the submitting party for correction.

Bookmarking electronic documents complies with California Rules of Court, rule 3.1110 (f).



# Superior Court of California
# County of Orange

**VIRGINIA DAVIDOW**

CIVIL UNIT MANAGER

657-622-7555

## ATTENTION ALL ATTORNEYS AND LITIGANTS

## NEW PROCEDURES for EXPEDITED JURY TRIALS IN CIVIL CASES are available, effective January 3, 2011.

A Judicial Council Information Sheet is attached to your complaint.

Specific details about the new procedure can be found in California Code of Civil Procedure commencing with Section 630.01 and California Rules of Court, rules 3.1545 through 3.1552. If applicable, notify the court at your first Case Management Conference.

## EJT-010-INFO   Expedited Jury Trial Information Sheet

This information sheet is for anyone involved in a civil lawsuit who is considering taking part in an **expedited jury trial—a trial that is shorter and has a smaller jury than a traditional jury trial. Taking part in this type of trial means you give up your usual rights to appeal. Please read this information sheet before you agree to have your case tried under the expedited jury trial procedures.**

This information sheet does not cover everything you may need to know about expedited jury trials. It only gives you an overview of the process and how it may affect your rights. **You should discuss all the points covered here and any questions you have about expedited jury trials with your attorney. If you do not have an attorney, you should consult with one before agreeing to an expedited jury trial.**

### (1)  What is an expedited jury trial?

An expedited jury trial is a short trial, generally lasting only one day. It is intended to be quicker and less expensive than a traditional jury trial.

As in a traditional jury trial, a jury will hear your case and will reach a decision about whether one side has to pay money to the other side. An expedited jury trial differs from a regular jury trial in several important ways:

- **The trial will be shorter.** Each side has 3 hours to put on all its witnesses, show the jury its evidence, and argue its case.

- **The jury will be smaller.** There will be 8 jurors instead of 12.

- **Choosing the jury will be faster.** The parties will exercise fewer challenges.

- **All parties must waive their rights to appeal.** In order to help keep down the costs of litigation, there are no appeals following an expedited jury trial except in very limited circumstances. These are explained more fully in (5).

### (2)  Will the case be in front of a judge?

The trial will take place at a courthouse and a judge, or, if you agree, a temporary judge (a court commissioner or an experienced attorney whom the court appoints to act as a judge) will handle the trial.

### (3)  Does the jury have to reach a unanimous decision?

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

### (4)  Is the decision of the jury binding on the parties?

Generally, yes, but not always. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. The court will enter a judgment based on the verdict, the jury's decision that one or more defendants will pay money to the plaintiff or that the plaintiff gets no money at all.

But parties who agree to take part in expedited jury trials are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also put a cap on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are known as "high/low agreements." You should discuss with your attorney whether you should enter into such an agreement in your case and how it will affect you.

### (5)  Why do I give up most of my rights to appeal?

To keep costs down and provide a faster end to the case, all parties who agree to take part in an expedited jury trial must agree to waive the right to appeal the jury verdict or decisions by the judicial officer concerning the trial unless one of the following happens:

- Misconduct of the judicial officer that materially affected substantial rights of a party;

- Misconduct of the jury; or

- Corruption or fraud or some other bad act that prevented a fair trial.

In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds.  Neither you nor the other side will be able to ask for a new trial on the grounds that the jury verdict was too high or too low, that legal mistakes were made before or during the trial, or that new evidence was found later.

→

Judicial Council of California, www.courts.ca.gov
New January 1, 2011, Mandatory Form
Code of Civil Procedure, § 630.01–630.10
Cal. Rules of Court, rules 3.1545–3.1552          **Expedited Jury Trial Information Sheet**          EJT-010-INFO, Page 1 of 2

# PROOF OF SERVICE BY MAIL

I am a citizen of the United States and employed in Los Angeles County, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 400 South Hope Street, Los Angeles, California 90071-2899. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence collected from me would be processed on the same day, with postage thereon fully prepaid and placed for deposit that day with the United States Postal Service. On March 13, 2012 I served the following:

## SEE ATTACHED LIST

by putting a true and correct copy thereof in a sealed envelope, with postage fully prepaid, and placing the envelope for collection and mailing today with the United States Postal Service in accordance with the firm's ordinary business practices, addressed as follows:

Frank J. Johnson
Shawn E. Fields
JOHNSON & WEAVER, LLP
110 West "A" Street, Suite 750
San Diego, California 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
Email: frankj@johnsonandweaver.com
       shawnf@johnsonandweaver.com

1

1    I declare under penalty of perjury under the laws of the United States

2  that the above is true and correct.  Executed on March 13, 2012, at Los Angeles,

3  California.

4

5                                    _C Kelley Canning_____

6                                         C) Kelley Canning

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

1

## LIST OF DOCUMENTS SERVED

2
3

NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT
COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
UNDER 28 U.S.C. § 1441(a);

4
5

DEFENDANT JOHN L. CLENDENIN'S NOTICE OF INTERESTED
PARTIES UNDER FED. R. CIV. PRO. 7.1 AND LOCAL RULE 7.1-1;

6

NOTICE OF RELATED CASES (C.D. Local Rule 83-1.3);

7

CIVIL COVER SHEET; AND

8

PROOF OF SERVICE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Josephine Tucker and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV12- 385 JST (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
JORGE L. VERAR, derivatively on behalf of POWERWAVE TECHNOLOGIES, INC.,

**DEFENDANTS**
RONALD J. BUSCHUR, KEVIN T. MICHAELS, MOIZ M. BEGUWALA, KEN J. BRADLEY, RICHARD E. BURNS, JOHN L. CLENDENIN, DAVID L. GEORGE, EUGENE E. GODA, AND CARL W. NEUN, Defendants; And

POWERWAVE TECHNOLOGIES, INC., Nominal Defendant

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Frank J. Johnson, Johnson & Weaver
110 West "A" Street
San Diego, CA 92101

Attorneys (If Known)

Seth Aronson
O'Melveny & Myers LLP
400 South Hope St.
Los Angeles, CA 90071, (213) 430-6000

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

### SACV12-00385 JST (RNBx)

FOR OFFICE USE ONLY:   Case Number _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.